UNITED STATES of America, Appellee,

v.

Mark J. FRIEDMAN, a/k/a "Mark Freeman," Defendant–Appellant.

No. 1393, Docket 90–1010.

United States Court of Appeals, Second Circuit.

Argued June 4, 1990.

Decided July 17, 1990.

J. Jeffrey Weisenfeld (Goldberger & Dubin, New York City, on the brief), for defendant-appellant.

James J. McGuire, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., David E. Brodsky, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before FEINBERG, NEWMAN, and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether remarks in a prosecutor's summation, acknowledged by the Government to be improper, warrant reversal of a conviction. The issue arises on an appeal from the December 8, 1989, judgment of the District Court for the Southern District of New York (Morris E. Lasker, Judge), convicting appellant Mark J. Friedman of narcotics offenses. We conclude that the conviction must be reversed and a new trial ordered.

## Facts

Friedman was indicted for conspiring to distribute and to possess with intent to distribute more than 500 grams of cocaine and an unspecified amount of marijuana, in violation of 21 U.S.C. § 846 (1988), and for possessing with intent to distribute more than 800 grams of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(B) (1988). The Government sought to prove that Friedman was the principal behind a transaction in which Albert Ortiz sold $10,000 worth of cocaine to Richard Buckner, a Government informant. Buckner secretly tape-recorded conversations with Ortiz in which Ortiz negotiated the transaction and identified Friedman as both his source and as the person who had to approve the

terms of the deal. On August 23, 1988, the day before the transaction, Ortiz told Buckner that he would have to check with his source before proceeding. Shortly thereafter Ortiz was observed entering the apartment building where Friedman lived. Ortiz was admitted after pressing the button for Friedman's apartment and identifying himself when a male voice responded over the intercom.

The transaction occurred the next day. Ortiz met Buckner, drove to Friedman's apartment building, and told Buckner that he had to go up to Friedman's apartment to pick up the cocaine. A few minutes later, Ortiz and Friedman came out of the building and entered Buckner's car. Ortiz was carrying a shoe box containing 362 grams of cocaine, which he delivered to Buckner. At Ortiz's instruction, Buckner handed $10,000 to Friedman. Moments later Friedman and Ortiz were arrested. In a search of Friedman's apartment, agents found in the bedroom one-half a kilogram of cocaine, two pounds of marijuana, a scale, an attaché case containing white powder, notebooks containing drug records, and cash.

The defense contended that Friedman was acting to help Ortiz in what he thought was a marijuana transaction and that Friedman was not a knowing participant in the cocaine transaction. A defense witness, Gregory Neumunz, who temporarily lived in Friedman's apartment during August 1988, testified that Ortiz also lived there at that time, occupying the bedroom while Neumunz and Friedman occupied the living room. Neumunz said that Ortiz had recently returned from Puerto Rico and had tried unsuccessfully to persuade Friedman and Neumunz to get involved in drug smuggling. Neumunz testified that he was the person who had admitted Ortiz to Friedman's apartment on August 23 and that Friedman was not in the apartment on that occasion. The defense also called a Government investigator to show that, though Friedman had provided handwriting exemplars, the drug notebooks found in the apartment bedroom did not contain his handwriting.

Neither Ortiz nor Buckner testified. The prosecutor informed the District Court that Ortiz was available and ready to be a witness.

The Government's opening summation consisted primarily of an unexceptional marshaling of the prosecution's evidence. However, toward the close, the prosecutor turned his attention to defense counsel, Paul Goldberger. Inviting the jury to consider the failure of the defense to present evidence in support of allegations in defense counsel's opening statement, the prosecutor said that "one of the witnesses in this case was Mr. Goldberger." Later, the prosecutor referred to "Mr. Goldberger's testimony, unsworn as it was." After arguing against the credibility of the defendant's witness, Neumunz, the prosecutor returned to defense counsel, referring to "the defendant's witness, Mr. Goldberger" and "the testimony of Mr. Goldberger."

Defense counsel's summation propounded the theory that Friedman thought the August 24 transaction involved marijuana and not cocaine. Counsel also argued that Ortiz had been lying when he told Buckner, in a tape-recorded conversation on August 23, that he had to check with his source and that his source insisted on payment in cash. In the defense view, Ortiz was handling the transaction on his own and using the claim of a superior's instruction to justify his own insistence on cash. Counsel argued that Neumunz's testimony showed that Ortiz was misleading Buckner because Friedman was not in the apartment on the 23rd when Ortiz stopped by, ostensibly to check with his source.

Defense counsel vigorously attacked the Government's decision not to call Ortiz, pointing out that he had been identified as a "cooperating witness" and was detained during the trial at the nearby Metropolitan Correctional Center. Counsel also faulted the Government's agents for an inadequate investigation and emphasized minor discrepancies in their testimony.

Early in his rebuttal summation, the prosecutor sought to answer the defense criticism of the investigation. Reminding

the jury that the agents had found Buckner, Ortiz, and Friedman, the prosecutor said the following:

And some people would have you pull down the wool over your eyes and forget all that, because while some people, ladies and gentlemen, go out and investigate drug dealers and prosecute drug dealers and try to see them brought to justice, there are others who defend them, try to get them off, perhaps even for high fees.

When defense counsel objected, the District Judge said, "Sustained. I don't think that is appropriate. Go ahead."

Later in the rebuttal, the prosecutor sought to challenge the defense theory that Friedman thought the transaction involved marijuana. Though defense counsel had not contended that Friedman thought the shoe box carried by Ortiz contained the entire $10,000 worth of marijuana that counsel argued Friedman thought was being sold, the prosecutor argued that such a quantity of marijuana would fill half a bedroom and could not possibly fit in a shoe box. That argument precipitated the following:

Mr. Goldberger: Objection, That's not my argument, Judge.

The Court: Overruled.

Mr. McGuire: That's his argument, and when he is exposed to the absurdity of it he wants you to believe it isn't his argument because he will make any argument he can to get that guy off.

Objection to this last remark was overruled.

At the conclusion of the rebuttal, defendant moved for a mistrial, focusing on the prosecutor's statement about the roles of prosecutors and defense counsel. The motion was denied.

The jury found Friedman guilty of both the conspiracy and the possession counts, though limiting its verdict to a conspiracy to distribute less than 500 grams of cocaine. Friedman was sentenced to five years of imprisonment and four years of supervised release.

Discussion

■ Preliminarily, we fault both sides for neglecting to include in the joint appendix the pages of the trial transcript containing the summations. Since the only issue on appeal is whether the prosecutor's summation warrants reversal of the conviction, the transcript pages of that summation and of the defense summation that is alleged to have provoked it were necessary components of the joint appendix.

We take this opportunity to remind the bar of the vital function of the joint appendix in the consideration of appeals heard by this Court. Most of the judges of this Court maintain their permanent chambers outside of New York City. For them, the single copy of the trial transcript filed with the Clerk's office at Foley Square is not readily available for inspection before or after their attendance in New York City to hear argument. The bar has come to expect that the judges of this Court will attend argument fully informed about the appeal. The joint appendix, available to all members of the panel at their resident chambers, provides the basis for thorough pre-argument preparation and for further study of the issues as an opinion is being written and considered by the panel.

■ To facilitate such preparation and study, the parties are obliged to include in the appendix the relevant docket entries; the relevant portions of the pleadings, charge, findings, or opinion; the judgment, order, or decision in question; and "any other parts of the record to which the parties wish to direct the particular attention of the court." Fed.R.App.P. 30(a). Though the initial burden of preparing the appendix falls on the appellant, *id.*, the parties are "encouraged to agree as to the contents of the appendix," *id.* 30(b), *i.e.*, to prepare a joint appendix, failing which the appellee is obliged to notify the appellant of portions of the record to be relied on by the appellee, and the appellant must include those portions in the appendix, *id.* Though we have no desire to add to the costs of litigation by requiring the routine filing of voluminous joint appendices, we urge the bar to include those portions of

the record essential to consideration of the issues raised on appeal.[1] In this case, the summations should have been included.

On the merits of the appeal, the Government has candidly acknowledged that the prosecutor's remark concerning the roles of prosecutors and defense counsel was improper.[2] Plainly it was. By telling the jury, "[W]hile some people ... go out and investigate drug dealers and prosecute drug dealers and try to see them brought to justice, there are others who defend them, try to get them off, perhaps even for high fees," the prosecutor managed in one breath to undermine the presumption of innocence, the Government's obligation to prove guilt beyond a reasonable doubt, and the standards of propriety applicable to public prosecutors. The jury was invited to conclude that everyone the Government accuses is guilty, that justice is done only when a conviction is obtained, and that defense counsel are impairing this version of justice by having the temerity to provide a defense and to try to "get" the guilty "off."

Nor was this the only remark in the summation that conveyed to the jury a fundamental misconception of the role of defense counsel. By repeatedly characterizing defense counsel as a "witness" and his opening statement as "unsworn testimony," the prosecutor was urging the jury to ignore defense counsel's entirely legitimate role as an advocate, discharging as important a responsibility in representing the defendant as the prosecutor has in representing the United States. The prosecutor continued his assault with the grossly improper accusation that defense counsel "will make any argument he can to get that guy off," a remark the Government contends "was not improper." Brief for Appellee at 18. The prosecutor was entitled in rebuttal to provide an answering argument, based on the trial evidence, to any argument that defense counsel advanced in summation. He was not entitled, however, to malign defense counsel by accusing him of willingness to make unfounded arguments that were not made.

The Supreme Court has reminded us that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding," *United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985), and that such remarks "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error," *id.* at 12, 105 S.Ct. at 1044. In assessing that context, we have focused on three factors—the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct. *See United States v. Biasucci*, 786 F.2d 504, 514 (2d Cir.), *cert. denied*, 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

We have already discussed the severity of the misconduct. The prosecutor's remarks were grossly improper, risking a serious distortion of the jury's understanding of the roles of prosecutor and defense counsel. Though the Government contends that to some extent the misconduct was provoked by defense counsel's summation, we do not agree. The defense summation was vigorous, but it focused on the evidence and the lack of evidence, notably the absence of the Government's "cooperating witness," Ortiz.

The District Judge's response to the improper rebuttal summation was modest. When the remark about the roles of prose-

---

1. One caveat should be noted. A challenge to the sufficiency of the evidence frequently requires examination of the entire transcript. Where sufficiency is challenged, we do not think the expense of including the entire transcript in the joint appendix is justified.

2. In its brief, the Government initially minimized the remark as "an unfortunate rhetorical flourish," Brief for Appellee at 11, and conceded only that the prosecutor "should not have made the comment," *id.* at 18. Subsequent to oral argument, the Government more forthrightly acknowledged that the remark was "improper." Letter from Asst. U.S. Atty. David E. Brodsky.

cutors and defense counsel was made, Judge Lasker sustained an objection but said to the jury only, "I don't think that is appropriate." Perhaps the experienced trial judge thought that an extensive reprimand to the prosecutor and a cautionary instruction to the jury would call undue attention to the improper remark. However understandable such motivation might be, the result was to leave with the jury the prosecutor's seriously distorted views of the adversary process. When the prosecutor, continuing his attack on defense counsel, made the improper remark that defense counsel would make any argument to get his client off, objection was overruled. In those cases where a prosecutor's improper remarks have not been deemed prejudicial, the record has disclosed emphatic curative instructions by the trial judge. *See, e.g., United States v. Tutino,* 883 F.2d 1125, 1136 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Biasucci,* 786 F.2d at 514 & n. 10, 11.

As to the certainty of conviction absent the misconduct, there are factors cutting both ways. The evidence included the defendant's voice in a tape-recorded conversation in Buckner's car, making statements that the jury was entitled to conclude indicated his knowledge of a cocaine transaction and his direction of it. On the other hand, the defense theory that Friedman was discussing only a marijuana transaction was not implausible and stood unrefuted by Ortiz, whom the Government chose not to call as a witness. Perhaps the best indication that the Government's case was not so overwhelming is the inability of the jury at Friedman's first trial to reach a verdict.

In a series of decisions, this Court has condemned improper remarks by federal prosecutors though usually concluding that reversal of the conviction was not warranted. *See, e.g., United States v. Tutino,* 883 F.2d at 1135–37; *United States v. Nersesian,* 824 F.2d 1294, 1327–29 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *United States v. Biasucci,* 786 F.2d at 513–15; *United States v. Barlin,* 686 F.2d 81, 93 (2d Cir.1982); *Unit-*

ed States v. Modica, 663 F.2d at 1178–86; *United States v. Sprayregen,* 577 F.2d 173, 174–75 (2d Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978); *United States v. White,* 486 F.2d 204, 206–07 (2d Cir.1973), *cert. denied,* 415 U.S. 980, 94 S.Ct. 1569, 39 L.Ed.2d 876 (1974); *United States v. Benter,* 457 F.2d 1174, 1177–78 (2d Cir.); *cert. denied,* 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 82 (1972); *see also United States v. Coffey,* 823 F.2d 25, 27–28 (2d Cir.1987) (good-faith basis for factually unsupported remark); *United States v. Briggs,* 457 F.2d 908, 911–12 (2d Cir.), *cert. denied,* 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972) (improper remark, not objected to, not plain error); *United States v. Hestie,* 439 F.2d 131, 132 (2d Cir.1971) (same); *United States v. Johnson,* 331 F.2d 281, 282 (2d Cir.) (same), *cert. denied,* 379 U.S. 905, 85 S.Ct. 196, 13 L.Ed.2d 178 (1964). On occasion an improper summation has caused a reversal, *Floyd v. Meachum,* 907 F.2d 347 (2d Cir.1990); *United States v. Burse,* 531 F.2d 1151, 1153–55 (2d Cir.1976); *United States v. Drummond,* 481 F.2d 62 (2d Cir.1973), or contributed to a reversal, *United States v. Grunberger,* 431 F.2d 1062, 1068–69 (2d Cir.1970).

Each case must be carefully assessed as to its individual circumstances, and we have carefully done so in this instance. Here, the gravity of the misconduct was substantial, the District Court's response was insufficient to preclude a significant risk of prejudice, and we cannot confidently say that a conviction would surely have been obtained in the absence of the misconduct. The conviction is reversed, and a new trial is ordered.

Reversed and remanded.