**UNITED STATES of America, Appellee,**

v.

**José Manuel MELENDEZ,
Defendant–Appellant.**

**No. 1440, Docket 94–1211.**

United States Court of Appeals,
Second Circuit.

Argued May 9, 1995.

Decided June 16, 1995.

Lisa Scolari, New York City, for defendant-appellant.

Margaret M. Giordano, Asst. U.S. Atty., Zachary W. Carter, U.S. Atty., Julie Katzman, Asst. U.S. Atty., Brooklyn, NY, for appellee.

Before: NEWMAN, Chief Judge, CARDAMONE and PARKER, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The primary question on this appeal is whether an improper remark in a prosecutor's summation requires reversal of a criminal conviction. The question arises on an appeal by José Manuel Melendez from the April 19, 1994, judgment of the District Court for the Eastern District of New York (I. Leo Glasser, Judge), convicting Melendez of narcotics offenses. During the summation, the prosecutor told the jurors that they should believe the testimony of a key Government witness because "Judge Glasser knows he is telling the truth." Although this remark was plainly improper, we conclude that reversal is not warranted in this case.

## Background

In January 1993, Misael Gaviria, Sergio Ruiz, and two other seamen of the United States Navy were arrested in New York City at John F. Kennedy International Airport ("JFK") after they arrived on flights from Bogota, Colombia. All four men had ingested balloons filled with heroin. After the arrests, Gaviria agreed to cooperate with the Government. He admitted to having recruited the three other seamen, who were stationed with him in Norfolk, Virginia, to import heroin for a drug organization based in Queens, New York. He also claimed to have previously arranged for two other seamen, Angel Perez and defendant-appellant José Melendez, to smuggle heroin into the United States from Ecuador.

Based on Gaviria's information, Perez and Melendez were arrested in Norfolk in February 1993. Perez subsequently agreed to cooperate with the Government. In a superseding indictment against the alleged conspirators, Melendez was charged in four counts with conspiracy and substantive offenses in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 846; 952(a); 960(a)(1), (b)(1)(A); 963; and 18 U.S.C. § 2 (1988). Melendez was the only defendant to proceed to trial.

The Government's case against Melendez consisted primarily of the testimony of accomplice witnesses Gaviria and Perez. On direct examination, Gaviria, whose credibility was reenforced by the challenged summation remark, testified to the following events. He had been introduced to Melendez by Perez for the purpose of recruiting Melendez to smuggle drugs. The three men later met at Melendez's apartment, where Gaviria explained the details of the drug smuggling operation to Perez and Melendez. Gaviria then arranged to have Melendez travel to Ecuador and smuggle heroin into the United States. On October 30, 1992, Gaviria and Melendez flew from Norfolk to New York. They went to the home of Gaviria's cousin, where Melendez was given money for his trip. After they were driven to a travel agency to pick up Melendez's plane tickets, they took a cab to JFK, where Gaviria gave Melendez instructions for collecting the narcotics in Ecuador. When Melendez returned to the United States, he was met at JFK by Gaviria and Perez. At that point, Perez departed for his own smuggling trip to Ecuador, and Gaviria took Melendez to Gaviria's cousin's apartment, where Melendez passed the balloons. Gaviria paid Melendez $1,800, and Melendez returned to Norfolk. Gaviria also testified that about two weeks later, Melendez helped recruit Sergio Ruiz for the drug smuggling operation.

Perez corroborated Gaviria's testimony insofar as it concerned Perez's introduction of Melendez to Gaviria, the meeting between the three men at Melendez's home, and Melendez's return from Ecuador to JFK. He also described a telephone conversation between himself and Melendez after they learned of the arrest of Gaviria and the others. At that time, Perez and Melendez agreed to keep quiet about their own involvement. However, two weeks later, when he was being questioned by agents, Perez confessed and implicated Melendez.

The Government also offered records documenting Melendez's travel to Ecuador and showing that a telephone call had been made from his home to the apartment of Gaviria's cousin in Queens shortly before Melendez and Gaviria left Norfolk on the initial leg of Melendez's trip to Ecuador. Finally, the Government introduced translated transcripts of a recorded telephone conversation in Spanish between Melendez and Sergio Ruiz while Ruiz was in prison and Melendez was released on bail. The Government contended that the conversation revealed a plan by the two men to cover up their involvement in the conspiracy.

The defense did not call any witnesses. Rather, it attempted to impeach the testimony of Gaviria and Perez as motivated by their hope for lenient sentences if they testified against Melendez. On cross-examination, both witnesses were questioned at length about their cooperation agreements with the Government. In addition, Perez admitted that he had previously perjured himself at a hearing to suppress his confession. The defense summation did not contest that Melendez knew his alleged co-conspirators or that he had traveled to Ecuador, but disputed that he brought heroin back to the United States when he returned from Ecuador or that he otherwise participated in the conspiracy. In addition, the defense argued that during the recorded telephone conversation between Melendez and Ruiz, Melendez was actually denying any involvement in the conspiracy, rather than planning a cover-up, as the Government maintained.

The prosecutor's summation initially recapitulated Gaviria's testimony and its partial corroboration by Perez and by the physical evidence. The prosecutor then turned to the question of Gaviria's credibility, and argued as follows:

> Even if [Gaviria] gets a letter from the government saying that he cooperated with the government enabling his sentence to be reduced[,] the United States Attorney's Office has no control over his sentence. You can read about this in their plea agreements. Judge Glasser, I submit to you, has the ultimate control over his sentence.

I submit to you, members of the jury, how do you know he is telling the truth? You know he is telling the truth and *Judge Glasser knows he is telling the truth.*

Tr. 543–44 (emphasis added). Defense counsel promptly objected, and her objection was sustained. Responding to defense counsel's request for a curative instruction, Judge Glasser said, "Yes, the jury can disregard that." There was no request for a mistrial.

In his final jury instructions, Judge Glasser emphasized that the jury was the sole judge of fact, that its determination of the facts must be based on the evidence presented at trial, and that the arguments, remarks, and questions of the lawyers were not evidence. Neither party requested, and the Judge did not give, any further instruction relating specifically to the prosecutor's statement that Judge Glasser knew Gaviria was telling the truth.

The jury returned a verdict of guilty on all four counts.

### Discussion

■ The only issue meriting discussion is the claim that reversal is required because of the prosecutor's statement that "Judge Glasser knows [Gaviria] is telling the truth." The quoted remark was clearly improper. Its risk of prejudice was greater than in cases where prosecutors refer in summation to their own belief in their witnesses' truthfulness, a practice we have regularly condemned. *See United States v. Modica,* 663 F.2d 1173, 1178–79 (2d Cir.1981) (collecting cases), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *see also United States v. Rivera,* 22 F.3d 430, 437 (2d Cir.1994). The essential vice of a statement of personal belief by the prosecutor is the implication that the prosecutor's opinion is based on matters uncovered by the Government's investigation but not presented in the evidence at trial. *See United States v. Young,* 470 U.S. 1, 18, 105 S.Ct. 1038, 1048, 84 L.Ed.2d 1 (1985); *Modica,* 663 F.2d at 1179; *see also United States v. Pinto,* 850 F.2d 927, 936 (2d Cir.), *cert. denied,* 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988). In addition, "the prosecutor's opinion carries with it the imprimatur of the Government

and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Young,* 470 U.S. at 18–19, 105 S.Ct. at 1048; *see also Modica,* 663 F.2d at 1178.

These dangers are intensified when the prosecutor tells the jury that the trial judge "knows" that a Government witness is telling the truth. The jury is invited to infer from such a statement that the judge's "knowledge" is based on evidence not in the trial record. Since the jury heard a reference to a pretrial hearing (involving Perez's confession), the prosecutor's remark carried a high risk that the jury would conclude that Judge Glasser had previously assessed the credibility of witnesses, including Gaviria, and had found Gaviria credible on the basis of some evidence not available to the jury. And the jury is more likely to be influenced when an evaluation of the facts receives the imprimatur of an impartial trial judge, rather than a prosecutor, whom the jury recognizes to be an advocate.

The appellee has attempted to explain the remark as "an inartfully-worded reference to the fact that the government was not the sole evaluator of Gaviria's credibility: the jury would be required to assess his credibility during its deliberations, and Judge Glasser would be required to assess his credibility when imposing sentence." Brief for Appellee at 19. It is not clear what point the appellee is trying to make. If this explanation is intended to mean that Gaviria's reward for cooperation will depend on a favorable assessment of his credibility not only by the prosecutors but also by the jury and the trial judge, it would compound the problem by suggesting that Gaviria had an interest in a guilty verdict, an interest that would create an incentive to embellish his testimony. If the point was only that any consideration at Gaviria's sentencing would depend on Judge Glasser's view of his credibility, the explanation strains the meaning of "inartful." The prosecutor told the jury that Judge Glasser "knows" Gaviria is telling the truth, not that some time in the future the Judge will have to consider the witness's credibility. The explanation does not dispel the clear impropriety of a prosecutor's argument to the jury

that the trial judge "knows" a witness is telling the truth.

■ Whether reversal is warranted, however, requires further consideration. "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, ... the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *Young,* 470 U.S. at 11–12, 105 S.Ct. at 1044. In making this assessment, this Court has focussed primarily on three factors: the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct. *United States v. Rosa,* 17 F.3d 1531, 1549 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994); *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990).

With regard to the severity of the misconduct, we have already stated that the remark was highly improper and created a risk of prejudice for the defendant. On the other hand, the severity was mitigated somewhat in this case because the remark appears to have been an aberration in an otherwise fair proceeding. *See United States v. Nersesian,* 824 F.2d 1294, 1329 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); *Modica,* 663 F.2d at 1181. In contrast, most of the cases in which we have reversed convictions as a result of prosecutorial misconduct have involved repeated improper statements whose aggregate effect was more likely to undermine the fairness of the trial. *See Friedman,* 909 F.2d at 709 ("assault" on role of defense counsel); *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990); *United States v. Burse,* 531 F.2d 1151, 1154–55 (2d Cir.1976); *United States v. Drummond,* 481 F.2d 62, 63–64 (2d Cir.1973). *But cf. United States v. Grunberger,* 431 F.2d 1062, 1068–69 (2d Cir.1970) (isolated improper remark by prosecutor contributed to reversal).

As to the second factor, the measures taken to cure the misconduct, Judge Glasser immediately sustained defense counsel's objection to the improper remark and, upon a

request by counsel for an instruction, said "Yes, the jury can disregard that." While these steps undoubtedly helped to blunt any potential prejudice, we agree with appellant that a more emphatic curative instruction would have been appropriate under the circumstances. *See Friedman,* 909 F.2d at 710. In addition to being phrased permissively, the instruction that was given failed to directly counter the suggestion that the trial judge knew that Gaviria was telling the truth. Similarly, although Judge Glasser properly charged the jury that it was the sole judge of the facts and that statements of counsel were not evidence, his final instructions also did not directly confront the suggestion that he believed that Melendez was guilty. *Cf. United States v. Mickens,* 926 F.2d 1323, 1328 n. 1 (2d Cir.1991) (approving curative instruction that trial judge's questioning of witnesses "is not to be taken by you in any way as indicating that the Court has any opinion as to the guilt or lack thereof of a defendant in this case"), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 111 (1992); 1 Leonard B. Sand et al., *Modern Federal Jury Instructions* ¶ 2.01, at 2–10 to 2–11 (1995) (Instruction 2–3).

■ Nevertheless, after Judge Glasser told the jury that they could disregard the prosecutor's remark, defense counsel did not request any further instruction at that point nor request language on this matter for inclusion in the final jury charge. In the absence of such a request, the trial judge may have feared that a more emphatic instruction would have the unwanted effect of focusing the jury's attention on the improper remark. Defense counsel's failure to request specific instructions may be overlooked where the prosecutor's misconduct is so prejudicial that no instruction could mitigate its effects. *See Floyd v. Meachum,* 907 F.2d at 356. But in less egregious cases, the failure to request specific instructions before the jury retires will limit the defense's ability to complain about the relative lack of curative measures for the first time on appeal. *Cf.* Fed. R.Crim.P. 30.

Turning to the last factor, we are unable to say that Melendez's conviction was certain in the absence of the prosecutor's misconduct, though it was highly likely. The Government's case against Melendez consisted almost entirely of the testimony of two accomplice witnesses who had entered into cooperation agreements with the Government, one of whom was an admitted perjurer. However, their testimony was bolstered by its consistency with several circumstances, established by independent evidence. The Government contends that the recorded conversation between Melendez and Sergio Ruiz, in which the two men purportedly planned a cover-up of their alleged roles in the conspiracy, was additional evidence of Melendez's guilt. As the Government interprets the conversation, when Melendez said that he was *not* involved in the conspiracy and knew nothing about it, he actually meant that he *was* involved in the conspiracy but that he and Ruiz should conceal his participation. The transcript as a whole permits that reading, but does not require it.

We also give some consideration to the Government's own awareness that it has departed from prosecutorial standards. On this score, we are not encouraged by the Government's tepid characterization of the improper remark in its brief as merely "inappropriate" and "better left unsaid." Brief for Appellee at 15, 17. On the other hand, the Government does not contend that it is entitled to make such a remark. Such a contention would suggest a tactical and likely prejudicial advantage that the Government wants to achieve. At oral argument the prosecutor who uttered the remark forthrightly acknowledged that it was "error." We are satisfied that the risk of recurrence is virtually non-existent.

■ We are therefore left with the ultimate question whether, on balance, the prosecutor's improper remark helped tip the scales in favor of conviction in a case where the proof was strong but not overwhelming. Although the remark was a serious instance of misconduct, a more emphatic curative instruction, if requested, would surely have forestalled any possible prejudice, especially since this was an isolated impropriety in an otherwise fair trial. Defense counsel made no such request, nor moved for a mistrial. Although no federal rule of procedure re-

quires a mistrial motion in order to preserve the issue of prosecutorial misconduct for appeal, the absence of such a motion provides some indication that the improper remark was not perceived as rendering the trial unfair and may indicate that defense counsel preferred to have this jury decide her client's fate. Assessing all the circumstances, we conclude that the prosecutor's summation does not warrant reversal.

### Conclusion

We have thoroughly considered the other issues raised by appellant and find them to be without merit. The judgment of the District Court is affirmed.