10-1789-cr
United States v. Holmes

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of May, two thousand eleven.

PRESENT:
> ROBERT D. SACK,
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                                                    No. 10-1789-cr

EUGENE HOLMES,

> *Defendant-Appellant.*

---

FOR DEFENDANT-APPELLANT:          EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, New York.

FOR APPELLEE:          LAN NGUYEN, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*) *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York.

Appeal from a judgment of the United States District Court for the Eastern District of

New York (Raggi, *J.* and Amon, *J.*).  **UPON DUE CONSIDERATION**, **IT IS HEREBY**

**ORDERED, ADJUDGED, AND DECREED**, that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Eugene Holmes appeals from a judgment of conviction entered on April 23, 2010 following a jury trial in the Eastern District of New York convicting him of one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On appeal, Holmes contends that (1) the evidence was insufficient to prove that he had possession of the firearm, (2) the district court erred in admitting tape recordings purporting to show Holmes was involved in drug trafficking, (3) the government's characterization of defense counsel as a pickpocket's accomplice during its rebuttal summation rendered the trial fundamentally unfair, (4) the district court improperly relied on acquitted conduct to enhance his sentence, and (5) his sentence of 96 months' imprisonment was substantively unreasonable. We assume the parties' familiarity with the underlying facts and procedural history of the case.

## I. Discussion

### A. Sufficiency of the Evidence

"A defendant challenging the sufficiency of the evidence underlying a criminal conviction bears a heavy burden, because this Court must review the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor." *United States v. Mercado*, 573 F.3d 138, 140 (2d Cir. 2009) (internal quotation marks omitted). We must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). The jury's verdict may be based on circumstantial evidence and the government "is not required to preclude every

2

reasonable hypothesis which is consistent with innocence." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) (internal quotation marks omitted).

To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony, (2) that the defendant knowingly possessed the firearm, and (3) the defendant possessed the firearm in or affecting interstate commerce. *See, e.g., United States v. White*, 552 F.3d 240, 245 n.2 (2d Cir. 2009). Holmes does not contest elements one and three and there is no dispute that Holmes was not in actual possession of the gun at the time of his arrest. Rather, the government sought to prove at trial that he had constructive possession of the gun.

"Constructive possession exists when a person knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Paulino*, 445 F.3d 211, 222 (2d Cir. 2006) (internal quotation marks and alterations omitted). In determining whether the defendant had constructive possession of a firearm, courts consider "whether the defendant exercised dominion and control over the premises in which the firearms are located." *United States v. Dhinsa*, 243 F.3d 635, 676 (2d Cir. 2001) (internal quotation marks omitted). "It is of no moment that other individuals also may have exercised control over the weapons" and the government may prove constructive possession through either direct or circumstantial evidence. *Id.* at 677. "Mere proximity or presence" standing alone, however, is "insufficient to support a finding of constructive possession." *United States v. Rodriguez*, 392 F.3d 539, 548 (2d Cir. 2004).

Holmes contends that the government failed to prove beyond a reasonable doubt that he knowingly possessed the handgun found in the van at the time of his arrest. Holmes points to the lack of affirmative evidence that the gun belonged to him, noting the lack of witness testimony

3

or fingerprints directly connecting him to the gun. Holmes further argues that, where there was evidence showing that the DEA agents lost sight of cooperating witness Pedro Pena for several minutes before he entered the van and that, as a cooperator wearing a wire, Pena would have had a powerful motive to carry a gun for protection, the government failed to eliminate reasonable doubt that it was Pena's gun, not Holmes'.

Holmes' argument is not persuasive. The government set forth sufficient evidence from which a jury could find beyond a reasonable doubt that Holmes constructively possessed the firearm located in the van. Although it is true that the firearm was found between Holmes and Pena, the government presented evidence showing that Holmes owned the van where the firearm was located, that Pena had been thoroughly searched prior to his meeting with Holmes and no weapon was found, and that the van's other passenger denied knowledge or ownership of the gun, all of which pointed to Holmes as the most plausible source of the gun's presence in the van. Furthermore, the jury was entitled to accept the government's theory that Holmes had the weapon with him the entire time and to disregard the defense's speculative theory that Pena had acquired the gun somewhere in the parking lot in the matter of minutes he was out of view of the DEA agents. Although Pena, as a cooperating witness, may have had a motive to carry a weapon, so did Holmes who was traveling with over $95,000 in cash. The foregoing factors go beyond establishing Holmes' mere presence with or proximity to the weapon, but rather establish a sufficient nexus between Holmes and the gun from which a rational jury could find beyond a reasonable doubt that Holmes had constructive possession of the firearm.

B.    Admission of Tape Recordings

Holmes next challenges the district court's decision to admit the tape recordings of conversations between him and Pena, arguing that the evidence—offered to establish Holmes'

4

involvement in a drug transaction—was unfairly prejudicial and should have been excluded as propensity evidence under Federal Rule of Evidence 404(b) which prohibits admission of "other crimes, wrongs, or acts . . . to show action in conformity therewith." The government contends that the district court properly admitted the tape recordings under Rule 404(b) as background to the charged conduct and as proof of motive for carrying the firearm at issue in this case and that any potential prejudice was mitigated by the court's limiting instructions.

We review evidentiary rulings for abuse of discretion. *Mercado*, 573 F.3d at 141. A district court abuses its discretion when it makes evidentiary rulings that are "arbitrary and irrational." *Id.* (internal quotation marks omitted). Finally, harmless error analysis applies to evidentiary rulings so that even an erroneous evidentiary ruling is "harmless" where "the evidence did not substantially influence the jury." *Id.* (quoting *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir. 2002)).

Rule 404(b) permits the admission of evidence to demonstrate a proof of motive. The government sought admission of the tapes to establish Holmes' motive for carrying a firearm with him, i.e., that he was traveling to engage in a drug transaction and was carrying a large amount of cash with him, thus giving him a motive for carrying a gun for protection. Accordingly, the evidence was admitted for a permissible purpose. The testimony adduced at trial from the DEA agents sufficiently established that the tape recordings referred to a drug transaction—Holmes and Pena discussed times to meet; the availability of a "whip" (a car with a hidden compartment); Pena's need for "cheddar" (i.e., money) and Holmes statement that he would be "paying for all of them"; and specific quantities of drugs, i.e., "five" plus an "extra five," taken to mean Holmes would be paying for five kilograms of cocaine and Pena would be bringing an additional five kilograms to sell on his own. The DEA agent further testified that

5

Holmes was carrying the street value of five kilograms of cocaine at the time of his arrest, i.e., $95,000 in cash. Moreover, the district court properly gave a limiting instruction which, *inter alia*, informed the jurors that "the defendant is not charged with drug dealing in this case," that the "evidence related to drugs" had been admitted "for a limited purpose" and should be considered only for "background to the charged firearm crime" and as "relevant to . . . the defendant's motive for allegedly possessing the charged firearm," and that the recordings could not be considered "as evidence that the defendant is of a bad character or that he has a propensity to commit crime." Accordingly, any potential for prejudice was drastically reduced. The district court, therefore, did not abuse its discretion in admitting the tapes pursuant to Rule 404(b).

C.    Rebuttal Summation

Holmes next contends that the government's characterization of his defense counsel as a pickpocket's accomplice during its rebuttal summation rendered the trial fundamentally unfair because the remark perniciously portrayed his attorney as a criminal who was helping his client obscure the truth from the jury and led the jurors to believe that adopting the defense's theory would be the equivalent of falling victim to a scam. Defense counsel did not object to the rebuttal summation at the time, and Holmes concedes that this argument is subject to plain error review on appeal.

"An improper remark by a prosecutor will justify a reversal by this Court only if it causes the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) (internal quotation marks omitted). Where the defendant did not object to the statement at trial, we evaluate the remarks using plain error analysis, meaning "we must reject his claim unless it . . . seriously affect[ed] the fairness, integrity, or public reputation of judicial

6

proceedings." *Id.* (internal quotation marks omitted). In other words, "[t]he statements must amount to flagrant abuse causing substantial prejudice." *Id.* (internal quotation marks and citations omitted).

Derogatory comments about defense counsel may warrant reversing a conviction in some cases, depending on, *inter alia*, the severity and context of the remark. *See, e.g.*, *United States v. Friedman,* 909 F.2d 705, 709 (2d Cir. 1990) (deeming as improper prosecutor's remark that "[w]hile some people . . . go out and investigate drug dealers and prosecute drug dealers and try to see them brought to justice, there are others who defend them, try to get them off, perhaps even for high fees"). Applying plain error analysis, however, we hold that the comments at issue in this case do not amount to flagrant abuse.[1] *See United States v. Millar*, 79 F.3d 338, 343-44 (2d Cir. 1996) (deeming prosecutor's comments that defense counsel was attempting to "confuse" the jury and "lead them astray" did not amount to flagrant abuse under plain error analysis); *see also United States v. Beridze*, No. 10-0064-cr, 2011 WL 1034269, at *4 (2d Cir. March 23, 2011) (declining to reverse where the prosecutor characterized defense counsel's arguments as "side shows" and "red herring[s]" during rebuttal summation); *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995) (characterization of defense case as a "fairy tale" did not amount to prosecutorial misconduct); *United States v. Resto,* 824 F.2d 210, 212 (2d Cir. 1987)

---

[1] At oral argument defense counsel stated repeatedly that the prosecutor had called Holmes' defense counsel at trial a "pickpocket's accomplice." It is important to note, however, that the prosecutor never actually used that phrase. As the transcript demonstrates, the phrase "pickpocket's accomplice" is at best an unspoken characterization of the prosecutor's objectionable comments:

> If you have ever been in the subways and sometimes you see the posters telling you to watch your wallet, always watch out, somebody may be trying to bump you so somebody else can pick your pocket, trying to distract you so you don't know what's really happening, so you don't know the important thing that's about to take place, that's what's going on here with the summation [defense counsel] just gave. He is trying to jostle you, to bump you, to startle you, to raise up your emotion so you will stop focusing on the issues, the elements of the case.

(deeming that prosecutor's references to defense tactics as "slick bits," "slyness," and "sleight-of-hand" were "improper" but "not . . . so egregious as to warrant reversal"). Furthermore, given the strong evidence against Holmes, the prosecutor's remark did not substantially prejudice him. In context, the remarks at issue here, while admittedly improper and inappropriate, do not constitute plain error and thus do not warrant reversal.

D.     Enhancement Based on Acquitted Conduct

Holmes next contends that the district court erred in considering acquitted conduct when it applied a four-point enhancement for possessing the firearm in connection with drug trafficking. The government does not dispute that Holmes was acquitted of the conduct forming the basis for the drug trafficking enhancement but argues that this circuit's precedent permits the district court to consider acquitted conduct when determining an appropriate sentence. Holmes does not dispute that *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005), is directly on point and contrary to his position.

There, post-*United States v. Booker*, 543 U.S. 220 (2005), we held that district courts could continue to "consider acquitted conduct when sentencing within the statutory range authorized by the jury's verdict." *Vaughn*, 430 F.3d at 527. Because we are bound by *Vaughn*, Holmes' argument fails.

E.     Substantive Reasonableness

We review sentences for reasonableness, which is "akin to review for abuse of discretion." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). That review "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). In reviewing for substantive reasonableness, "we will not substitute our own judgment for the district court's on the question

8

of what is sufficient to meet the § 3553(a) considerations in any particular case" and "will instead set aside a district court's substantive determination only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Id.* (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)) (emphasis omitted).

The record of Holmes' sentencing reveals that the district court carefully considered all the relevant factors when it crafted his 96-month sentence, determining that his criminal history category was overstated and that Holmes had appeared to abandon the criminal lifestyle in the decade since he jumped bail. The court also considered the seriousness of the crime at issue, along with the fact that Holmes had absconded prior to his sentencing in 1999. Although the court felt that it was necessary to give Holmes a sufficiently punitive sentence in light of those negative factors, the court still departed downward from Holmes' guideline range of 108 to 135 months. We see nothing unreasonable or excessive about the district court's sentence that puts it beyond the range of permissible decisions.

## II.    Conclusion

We have considered all of Holmes' claims on appeal and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9