UNITED STATES of America, Appellee,

v.

**Barkolleh Menplay FORLORMA, Defendant–Appellant.**

No. 786, Docket 95–1342.

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1996.

Decided Aug. 29, 1996.

Eric Rothstein, Special Assistant United States Attorney, Brooklyn, NY, (Zachary W. Carter, United States Attorney, Eastern District of New York, and Susan Corkery, Assistant United States Attorney, Brooklyn, NY, Of Counsel), for Appellee.

David Wikstrom, New York City, for Defendant–Appellant.

Before: JACOBS, LEVAL, and PARKER, Circuit Judges.

LEVAL, Circuit Judge:

Defendant Barkolleh Menplay Forlorma appeals from a judgment of the United States District Court, Eastern District of New York (Charles P. Sifton, *Chief Judge*), convicting him of importing heroin and possessing heroin with intent to distribute, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1), and sentencing him to the mandatory minimum of ten years in prison, five years supervised release, and a $100 special assessment. On appeal, Forlorma argues that (1) the evidence upon which he was convicted was legally insufficient; (2) the jury's verdict was against the weight of the evidence; (3) he was deprived of a fair trial because of improper, prejudicial statements by the prosecution; and (4) the district court erred in not giving him the benefit of the "safety valve" provision of 18 U.S.C. § 3553(f). We find the evidence legally sufficient and affirm the district court's ruling that the jury's verdict was not against the weight of the evidence. However, because on an important issue in the case the prosecution made a series of arguments to the jury that had no basis in the evidence, we hold that Forlorma was substantially prejudiced and denied a fair trial. We therefore vacate the judgment and remand for a new trial.

*Background*

Forlorma is a naturalized American citizen from Liberia. On March 2, 1994, he left his home in Baltimore, Maryland, and travelled to Seoul, Korea. On his return to the United States at John F. Kennedy International Airport ("JFK") on March 12, he was arrested when customs agents found four kilograms of heroin concealed in a false side of one of his four bags.

At trial, Forlorma testified that the bag did not belong to him and that he had no awareness of the heroin concealed in the secret compartment. His version of the events is as follows: In Baltimore, he operated his own small electronics and computer repair business, B & B Electronics, which he had been hoping to expand into the area of computer assembly. He travelled to Korea to see about purchasing inexpensive computer parts for the new business.[1] At a party

---

1. Forlorma argues that the legitimacy of his trip to Korea is demonstrated by the fact that, before travelling, he wrote to Korean commerce and trade officials, phoned potential suppliers, sought out a loan and potential investors, and paid for the trip on his wife's credit card (as opposed to using cash). He apparently also had records of

before he left for Korea, he met a man named "Sony" who claimed to have business ties in Korea and who offered to assist him. Sony asked Forlorma in return to bring some electronic parts back from Korea for him, which Forlorma agreed to do. Before leaving the U.S., Forlorma did not hear from Sony about bringing back any items for him. But after Forlorma's departure, Sony called and Forlorma's wife told Sony how to reach Forlorma in Korea. Shortly thereafter, a man identifying himself as Sony's cousin arrived at Forlorma's hotel with a suitcase and asked him to take it back to the U.S. for Sony.

Forlorma testified that he was surprised at being asked to bring back a full suitcase and complained to Sony's cousin that he might be charged for excess baggage. In response, the man gave him $200 to cover overweight charges, whereupon Forlorma agreed to bring the bag. Before Sony's cousin left, Forlorma had him open the bag. The contents did not appear unusual. Forlorma testified that he thought he was bringing clothes and a telecommunications device to Sony.

The government did not dispute that Forlorma had genuine business reasons for travelling to Korea. It maintained, however, that Forlorma was deeply in debt and agreed to import the heroin into the U.S. in order to make some quick money for his new computer business. The sole contested issue at trial was whether Forlorma had knowledge that he was transporting the heroin.

The government relied primarily on the testimony of a customs inspector, John Cisneros, and two other customs officials. Cisneros testified that when asked at the baggage carousel at JFK whether the bags were his, Forlorma said that they were. Cisneros added: "I also asked him if all the contents inside the luggage belonged to him. He also responded by saying yes." Cisneros also testified that Forlorma became increasingly nervous and sweaty as Cisneros questioned him, examined his bags, and searched the inside of the bag with the heroin.

*Discussion*

A. *Legal Sufficiency and Weight of the Evidence*

 We need not pause long over the legal sufficiency of the evidence and the trial court's denial of the motion for a new trial based on the "weight of the evidence." Forlorma's possession of the heroin concealed in his baggage, coupled with his acknowledgement that the baggage was his and that he owned the contents, and with his visible nervousness during the search, were more than legally sufficient to establish his guilt. Based on this evidence, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Amato*, 15 F.3d 230, 235 (2d Cir.1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Furthermore, as to the weight of the evidence, notwithstanding that there were factors that distinguished Forlorma from the customary drug courier,[2] the jury was perfectly entitled to discredit Forlorma's claims of ignorance, especially because the testimony about his nervousness tended to contradict his claim. Accordingly, we reject these two contentions.

B. *The Prosecutor's Unsupported Arguments*

 Forlorma contends he was seriously prejudiced by the prosecutor's repeated baseless argument that a suit fitting Forlorma was in the bag with the heroin at the time of his arrest, thus reinforcing the inference of his awareness of the heroin concealed in the bag.

"It is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir.), *cert. denied*, 506 U.S. 847, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992); *see also*

---

his meetings during the trip with representatives of computer companies.

**2.** For example, there was evidence that Korea is not a source country for heroin; that Forlorma paid for his plane ticket with a credit card, rather than cash; and that he had a legitimate business reason for travelling to Korea, which was documented and was not disputed by the government.

*United States v. Valentine,* 820 F.2d 565, 570 (2d Cir.1987). Reversal is warranted only where "the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial." *United States v. Pena,* 793 F.2d 486, 490 (2d Cir.1986) (internal citations omitted); *see also Blissett v. Lefevre,* 924 F.2d 434, 440 (2d Cir.), *cert. denied,* 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991). Because there is a real likelihood here that the prosecutor's misstatements influenced the jury's verdict, we conclude that the defendant was deprived of a fair trial.

The background of the misstatements was as follows: Inspector Cisneros testified that, when he first searched Forlorma's bags on March 12, 1994, he saw new suits in the suitcase with the heroin. Forlorma acknowledged that he bought a new suit in Korea. Shortly after Forlorma's arrest, agents inventoried the contents of his four bags. Forlorma contends, and the government does not dispute, that in conducting the inventory, the agents emptied the four bags, commingled the contents—including many suits[3]—and then randomly redistributed the contents among the four bags.[4] Then, in late May 1994, one week before trial, probably at the direction of the Assistant U.S. Attorney, Forlorma was summoned to try on clothing that was then in the suitcase in which the heroin had been found. Some of the clothes fit him, while some did not. Men's suits were among the items that fit him. But by reason of the earlier commingling, the exercise was useless; there was no reason to suppose that any items *now* in the heroin suitcase had been in it when Forlorma arrived in the U.S.

Nonetheless, at trial, the prosecutor, who may have been unaware of the commingling, repeatedly argued to the jury that Forlorma's knowledge of the contents of the heroin suitcase was supported by the fact that it contained suits that fit him. In his opening statement, the prosecutor stated:

"You will ... hear that there was clothing in that bag that contained the heroin. You will hear that some of that clothing consisted of men's suits ... that fit the defendant."

In the initial summation at the conclusion of trial, the prosecutor said:

GOVERNMENT: "... Customs Inspector Cisneros didn't tell you about anything else, he told you there were brand-new men's suits [in the bag with the heroin].

You heard that the men's suits in there fit the defendant, and you also heard the defendant himself—"

DEFENSE: "Objection, your Honor."

THE COURT: "Sustained. Ladies and gentleman, let me caution you that it's your recollection of the evidence that counts and not counsel's."

The prosecutor repeated the same point in his rebuttal summation. After reiterating that Cisneros saw new suits in the bag with the heroin when he arrested Forlorma, he continued:

GOVERNMENT: "Ladies and gentleman, that is important because that's supported ... by the suit fitting the defendant and it's supported—"

DEFENSE: "Objection, your Honor, to a suit fitting the defendant."

THE COURT: "I will sustain the objection. There is no such testimony. Go ahead."

GOVERNMENT: "You heard the testimony about the defendant trying on certain articles of clothing.... Ladies and gentleman, it's important because the defendant opened that suitcase and the defendant put the suit in that suitcase, I submit that to you."

While it is unclear whether the prosecutor was aware *at trial* that commingling and redistribution had occurred during the

---

3. A customs inventory reported that the four bags—two suitcases, one shoulder bag, and a briefcase—contained seventeen pairs of pants and seven jackets. Presumably, this means there may have been as many as seven matching pants and jackets, or suits.

4. A handwritten inventory of Forlorma's items was inserted into one of Forlorma's bags prior to trial, but the inventory was unsigned and the customs official who led the investigation testified that he did not know who had prepared it, nor who put it into the bag.

agents' inventory, the government candidly conceded at oral argument of the appeal that the suits defendant tried on from the heroin suitcase shortly before trial had not necessarily been in that bag at the time of his arrival at JFK, and that accordingly there was no basis for the argument that the heroin suitcase had contained the defendant's personal belongings. The prosecutor acknowledged at argument that "no one could say where those suits had been before." *Cf. Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956) (conviction vacated by Supreme Court where government revealed that, on basis of information acquired since trial, veracity of lead government witness had been cast in doubt).

 In considering whether the government's misstatements deprived Forlorma of a fair trial, we consider (1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome. *See United States v. Russo*, 74 F.3d 1383, 1396 (2d Cir.1996) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284)(1982); *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir.1995). Generally, we would not reverse a criminal conviction merely because a prosecutor made an unsupported statement in argument—especially where the trial judge sustained the defendant's objections to it. Several aspects of these misstatements, however, lead us to conclude that they deprived Forlorma of a fair trial. We can have no confidence that the verdict would have been the same without these errors.

First, the factor of severity of misconduct points in two directions. On the one hand, as noted, there was no indication that the prosecutor was aware during trial of the inaccurate nature of his arguments. This favors the government. On the other hand, the prejudicial effect on the jury of a misleading argument is equally great regardless whether the attorney knows it to be baseless. The prosecutor's inaccurate assertion was uttered not once but three times, and with great emphasis. This was not an instance of a trivial misstatement that was likely to pass unnoticed. *See Melendez*, 57 F.3d at 241 (noting that "most of the cases in which we have reversed convictions as a result of prosecutorial misconduct have involved repeated improper statements"); *Modica*, 663 F.2d at 1181 (distinguishing prosecutorial misstatements requiring reversal from "minor aberrations in a prolonged trial").

As to the second factor, regarding measures taken to cure, although the trial judge sustained the defendant's objections, we cannot be confident that the judge's unexplained ruling dispelled the misperception that was likely caused by the baseless argument. The issue was extremely confusing. Inspector Cisneros testified he had seen suits in the heroin bag when he intercepted Forlorma at the airport. Forlorma conceded, furthermore, that he had bought a suit for himself in Korea. Finally, the jury had indeed heard evidence that, a week before trial, Forlorma had tried on suits then contained in the heroin bag, and that they fit. Thus, the jury had heard evidence that *appeared* to support the prosecutor's argument. Of course, the crucial missing piece was, as now conceded by the government, that between the time of Forlorma's arrest and the trying on of the suits from the heroin bag, the contents of the four bags had been commingled and randomly redistributed so that there was no basis for believing that the suits from the heroin bag that Forlorma tried on before trial had been in the heroin bag when he arrived. This was not explained to the jury when the court sustained the objection, or in the jury charge.

While charging the jury, the judge stated he had "admonished one of the lawyers during the course of the summations" not to "weigh in" with his view of the evidence. The judge also instructed the jury that: "Your recollection governs, and anything that ... the lawyers may have said is not to be substituted for your recollection of what the evidence is." In these confusing circumstances, we do not think these rulings and instructions were sufficient to undo the effect of the highly prejudicial inaccurate argu-

ment. *Cf. Melendez,* 57 F.3d at 242. Accordingly, although the court sustained the defendant's objections, this did not cure the error in the sense of insuring that jurors were not misled.[5]

Third, on the question of the certainty of conviction, the misstatements related to the most important issue at trial—indeed, the only contested issue—and related to it in two ways. If the suitcase contained Forlorma's suits, this showed he was lying in his claim that he had received the bag from Sony's cousin and brought it, contents undisturbed, to New York. Also, the presence of his suits in the bag tended to suggest his familiarity with its contents. Since knowledge of the heroin in the bag was the only issue Forlorma contested at trial, the prosecutor's statement to the jury that suits fitting Forlorma were in the bag with the heroin when he was arrested was likely to be devastating to his defense.

Considering all pertinent factors, we conclude that the prosecutor's unsupported arguments caused substantial prejudice to the defendant. We can have no confidence that the verdict would have been the same without these errors.

## Conclusion

We vacate the conviction and remand for a new trial.

---

**5.** After trial, Forlorma moved for a retrial on a number of grounds, including that the government's misrepresentations regarding the suits deprived him of a fair trial. *See* Memorandum of Law in Support of Post–Trial Motions Pursuant to Rules 29 and 33, F.R.Cr.P. (July 20, 1994), at 7, 34.