UNITED STATES of America,
Appellee,

v.

Jean Maxon LUCIEN, et
al., Defendants,

Yves Baptiste, Policia Baptiste,
Guerline Dormetis, Defen-
dants–Appellants.

Docket Nos. 02–1228, 02–
1266 and 02–1395.

United States Court of Appeals,
Second Circuit.

Oct. 14, 2003.

See also 2003 WL 22333062.

**142**

Jonathan C. Scott, Scott & Scott, LLP, Smithtown, New York, for Policia Baptiste.

Jason L. Solotaroff, Giskan & Solotaroff, New York, New York, for Guerline Dormetis.

Martin G. Goldberg, Franklin Square, New York, submitted a brief for Yves Baptiste.

Andrew J. Frisch, Assistant United States Attorney, Eastern District of New York, Brooklyn, New York, for Appellee.

Present: Hon. THOMAS J. MESKILL, Hon. RICHARD J. CARDAMONE, and Hon. JOSÉ A. CABRANES, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, Foley Square, in the City of New York, on the 14th day of October, two thousand and three.

Defendants Yves Baptiste, Policia Baptiste and Guerline Dormetis appeal from judgments of the United States District Court for the Eastern District of New York (Gleeson, J.), entered April 10, April 17, and July 26, 2002, respectively, convicting them—after a jury trial—of health care fraud in violation of 18 U.S.C. § 1347.

We address three of defendants' challenges to these judgments in a separate opinion filed today: (1) whether the federal health care fraud statute applies to the conduct of defendants, who participated as passengers in staged accidents designed to exploit New York's no-fault automobile insurance regime; (2) whether the district court fulfilled its statutory duty to inquire into defendant Yves Baptiste's economic circumstances in sentencing him to restitution; and (3) whether in Dormetis' case the district court improperly (a) enhanced

her base offense level, and (b) calculated the amount of the loss attributable to her. The remaining eight issues raised on appeal by defendants are discussed in this summary order.

■ 1. *Adequacy of the Indictment.* Dormetis argues that her conviction should be vacated because her indictment named as the defrauded "health care benefit program" Hertz Claims Management (Hertz), the claim adjustment company that initially investigated her claim, rather than Reliance National Indemnity (Reliance), the insurance company that actually paid the fraudulent claim. Dormetis maintains that Hertz could not have constituted a "health care benefit program" under the statute, because Hertz only provided a service to the insurer, and did not provide "any medical benefit, item, or service ... to any individual." *See* 18 U.S.C. § 24(b). Further, while Dormetis concedes that Reliance satisfies the statutory definition, she contends that her conviction may not be affirmed on this basis, as Reliance was not named in the indictment, and to uphold her conviction on this basis would constitute a constructive amendment of the indictment.

We do not decide today whether a claims adjuster can constitute a health care benefit program under 18 U.S.C. § 24(b) because we do not agree with Dormetis that substituting Reliance for Hertz constitutes a constructive amendment of the indictment. "A constructive amendment occurs when the government's presentation of evidence and the district court's jury instructions combine to modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." *United States v. Vebeliunas,* 76 F.3d 1283, 1290 (2d Cir.1996). "To prevail on a construc-

tive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Frank,* 156 F.3d 332, 337 (2d Cir.1998). "Constructive amendments are *per se* violations of the Fifth Amendment that require reversal even without a showing of prejudice to the defendant." *Vebeliunas,* 76 F.3d at 1290. Here, there was no danger that Dormetis was convicted of a different crime than the one charged, and the criminal conduct proven at trial—submission of specific fraudulent no-fault claims—does not vary from the criminal conduct charged in the indictment.

■ 2. *Vagueness Challenge.* Policia Baptiste contends that her conviction must be reversed because the federal health care fraud statute is vague and failed to give her fair warning that her fraud against the no-fault insurance plan would be deemed criminal. She argues that because the statute provides no definition of the terms "plan" or "medical benefit, item, or service," she received no notice that her conduct was proscribed.

As the Supreme Court explained in *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), the fair warning requirement is based on the principle "that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Id.* at 265. As a "manifestation" of the fair warning requirement, "the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* at 266. Here, appellant's fair warning

claim has no merit, as her fraud against the no-fault plan is, as we discuss in greater detail in our accompanying opinion, clearly covered and proscribed by the plain and unambiguous language of the health care fraud statute.

■ 3. *Sufficiency of Evidence.* Yves Baptiste and Dormetis both assert the evidence was insufficient to establish their knowing participation in the health care fraud. A defendant challenging a conviction on sufficiency grounds bears a "heavy burden." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.), *cert. denied sub nom.,* 537 U.S. 955, 123 S.Ct. 426, 154 L.Ed.2d 305 (2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, then [the] conviction must stand." *United States v. Martinez,* 54 F.3d 1040, 1042 (2d Cir.1995). A review of the record reveals ample evidence to support findings beyond a reasonable doubt by a rational trier of fact that Yves Baptiste and Dormetis engaged in health care fraud.

■ 4. *Interstate Commerce.* The health care fraud statute makes it a crime to defraud any health care benefit program, *see* 18 U.S.C. § 1347, and the statutory definition of a "health care benefit program" includes a requirement that such a program "affect[ ] commerce," *see* 18 U.S.C. § 24(b). Policia Baptiste and Dormetis contend the government did not present sufficient evidence for a rational trier of fact to have found the no-fault insurance policies at issue in this case affected interstate commerce.

We have interpreted the phrase "affecting commerce" as being generally demonstrative of Congress' aim to exercise its full power under the Commerce Clause, *see* *United States v. Farrish,* 122 F.3d 146, 148 (2d Cir.1997), and have held that a showing of a minimal effect on interstate commerce is sufficient in such cases to satisfy the statutory requirement, *see id.* at 149. Given this minimal standard, the evidence that the no-fault policies at issue here covered both in- and out-of-state accidents and that such coverage removed a disincentive for New York residents to drive out-of-state was sufficient proof for a rational trier of fact to have found that the no-fault insurance policies at issue affected interstate commerce. *See Martinez,* 54 F.3d at 1042.

■ 5. *Jury Charge.* Dormetis urges that the district court erred in refusing to instruct the jury that in order to find her guilty, it had to find she was a knowing participant in a staged accident. She contends the district court's refusal to instruct the jury in this respect constituted a constructive amendment of or a prejudicial variance from the indictment.

We set out above what must be demonstrated to prevail on a constructive amendment claim. The proof or jury instructions must make it uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment. *See Frank,* 156 F.3d at 337. Because Dormetis concedes in her brief that her awareness with respect to deliberateness of the accident is not itself an element of the charged crime of health care fraud, it cannot be said that the district court's refusal to charge the jury as Dormetis requested constituted a constructive amendment of the indictment.

With respect to Dormetis' claim of prejudicial variance, "[a] variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." *Dunn v. United States,* 442 U.S. 100, 105, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). In order to obtain relief from

her conviction on this ground, a defendant must demonstrate that the variance resulted in "substantial prejudice." *United States v. McDermott*, 918 F.2d 319, 326 (2d Cir.1990). We are not persuaded by Dormetis' assertion of prejudicial variance for we find neither variance nor prejudice. First, her suggestion that the government's presentation of evidence on both the deliberateness of the accidents and falsity of the subsequent medical claims somehow necessitated jury instructions pertaining to both aspects of the scheme is illogical; the district court rightfully limited the jury instructions to the statutorily defined elements of the crime charged. Second, even assuming some degree of variance, Dormetis has not demonstrated prejudice: her assertions of prejudice are conclusory at best and, in any event, we are persuaded that the absence of her proffered jury instruction was not prejudicial, let alone substantially so, since the government presented persuasive evidence of her knowing participation in a staged accident.

■ 6. *Government's Rebuttal Summation.* Dormetis declares that she should be granted a new trial because of the prosecution's prejudicial remark to the jury, during rebuttal summation, that "you have not heard or seen anything at this trial to suggest anyone at this table has any interest in prosecuting an innocent person." Rarely are comments in a prosecutor's summation "so prejudicial that a new trial is required." *United States v. Forlorma*, 94 F.3d 91, 93 (2d Cir.1996). "Reversal is warranted only where the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial." *Id.* at 94.

Under this strict standard, Dormetis' challenge fails for two reasons. First, the prosecutor's comment was a direct response to defense counsel's suggestion in summation that the prosecution would have ignored exculpatory evidence. Specifically, Dormetis' counsel argued that it was in the cooperating witnesses' interest to tell whatever story the government wanted to hear rather than to tell the truth. Defense counsel further suggested that the prosecution would not have punished the cooperating witnesses for lying, as long as their testimony was what the prosecution wanted to hear. In light of this attack on the prosecutor's integrity, the rebuttal remarks were not improper. *Cf. United States v. Germosen*, 139 F.3d 120, 128–29 (2d Cir.1998) (concluding government's comment it was too busy to prosecute and frame innocent people was not improper when made in response to defense argument that government would have suborned perjury to convict defendant). Second, the prosecutor's statement, even if improper, was unlikely to affect the outcome of the trial, given its context and the substantial evidence of Dormetis' guilt. *Id.* at 128. Thus, a new trial is not required.

■ 7. *Requests for Downward Departure.* Finally, Dormetis contests the district court's denial of her requests for a downward departure. At sentencing, Dormetis requested such departures on two grounds: (1) that the amount of loss included in her offense level calculation significantly over-represented the seriousness of her offense and (2) that she was a victim of a rape at the age of 14 and the trauma of that event diminished her mental capacity.

A district court's denial of a downward departure request is generally not appealable unless the record shows the district court misunderstood the scope of its authority to depart. *United States v. Silleg*, 311 F.3d 557, 561 (2d Cir.2002). There is a strong presumption that sentencing judges understand the scope of their authority, which is overcome only if the record contains clear evidence of substantial

risk of the contrary. *United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996) (per curiam). Here, after reviewing the relevant pages of the sentencing transcript, we find no indication that Judge Gleeson misunderstood the scope of his departure authority. His comments and references to relevant legal authority, including *United States v. Restrepo,* 936 F.2d 661 (2d Cir. 1991) and *United States v. Rivera,* 192 F.3d 81 (2d Cir.1999), clearly evince that he understood the scope of his authority. Thus, the denials of departure applications are not reviewable on appeal.

■ 8. *Jencks Act Material.* Dormetis first asserts that she must be given a new trial because her request to make use of an FBI agent's handwritten notes from an interview of a cooperating witness was improperly denied. The trial court ruled against appellant's request which came during the examination of the last government witness, based on its findings that, in the circumstances presented, the request came too late and that the notes were both cumulative and insufficiently probative. The handwritten notes in question—jotted down by an FBI agent during an interview with cooperating witness Fritz Laurent— were not produced by the government before trial, when the government produced FBI agents' typed reports of witness interviews. The government now concedes it should have provided the agents' handwritten notes together with the typed reports.

This admission of error does not necessitate a new trial. Failure to disclose witness statements covered by the Jencks Act, 18 U.S.C. § 3500, does not require a new trial if the omission is harmless. *United States v. Nicolapolous,* 30 F.3d 381, 383 (2d Cir.1994). The failure to disclose is harmless when there is no reasonable probability that, had the evidence been disclosed, the outcome of the proceeding would have been different. *Id.* at 383–84. Appellant insists the govern-

ment's failure to disclose the notes was prejudicial because the notes contained valuable impeachment material. We are not persuaded by this argument because the impeachment material in the notes is, in our view, cumulative of the information the defense elicited in its cross-examination of the FBI agent who took the notes. The government's failure to disclose the agent's handwritten notes therefore was harmless error, not prejudicial to Dormetis.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of the District Court are hereby AFFIRMED.