**Julius WARE, Petitioner,**

v.

**The People of the State of NEW YORK, Respondent.**

No. 00–CV–6563.

United States District Court, W.D. New York.

April 6, 2005.

Julius Ware, Moravia, NY, for Petitioner.

Gary M. Levine, Esq., NYS Attorney General's Office, Department of Law, Rochester, NY, for Respondent.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Julius Ware ("Ware") filed this *pro se* petition for a writ of habeas corpus pursu-

ant to 28 U.S.C. § 2254 challenging his conviction in Ontario County Court on one count of first degree burglary. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ware's conviction arises from an incident that occurred at the apartment of Albert Slaughter ("Slaughter"), an acquaintance of his. On the night of July 22, 1997, Ware and Slaughter were spending time at Slaughter's apartment along with Slaughter's girlfriend, Ware's girlfriend, and another female friend. All of those present were drinking alcohol and shared about four to six forty-ounce bottles of Country Club malt liquor over the course of the evening. At some point, Ware began making crude sexual comments to McKoy and the other women present. Slaughter repeatedly asked Ware to leave, but Ware refused. Eventually, Ware left the apartment, vowing to return to kill Slaughter. According to Slaughter, Ware's departing words were, "I be back [sic]. I am going home and get my knife and I am going to kill you, mother fucker." T.66.[1]

About fifteen to twenty minutes later, Ware returned to Slaughter's apartment. Unable to enter through the front door, Ware proceeded to the kitchen entrance and kicked in the door. Brandishing a folding knife with a hooked blade, Ware declared that he had come to kill Slaughter and put the knife up to Slaughter's neck. During the ensuing scuffle, Slaughter grabbed a kitchen knife that was laying on the television set and stabbed Ware. Ware then chased Slaughter out of the apartment. Slaughter sought refuge at a local hotel and called the police.

Ware was apprehended after a brief foot chase and transported to the hospital, but he refused to be treated and left. When Sergeant D'Amico of the City of Geneva Police Department located Ware again, Ware had changed his clothes and shoes and was carrying a billy club. Ware was taken to the police station to be interviewed. While there, he pretended to have a seizure. The ambulance was called, but Ware again refused medical treatment. Sergeant D'Amico recalled that Ware's breath smelled like alcohol, but that Ware did not appear to be intoxicated. According to Sergeant D'Amico, Ware was coherent and responsive to questioning.

In Ware's version of events, his last recollection was of attempting to leave Slaughter's apartment because he realized that Slaughter was angry and wanted him to leave. However, according to Ware, Slaughter's girlfriend grabbed him around the waist for some reason, at which point he passed out because he was drunk. Ware contended that he remembered nothing about the stabbing.

An Ontario County Grand Jury returned an indictment charging Ware with one count of first degree burglary, one count of third degree criminal possession of a weapon and one count of second degree menacing. The prosecution offered Ware a sentence of three to six years in return for a guilty plea, but Ware rejected the offer. Prior to trial, the offer was reinstituted, but Ware again rejected it.

Ware was tried before a jury in Ontario County Court (Harvey, J.) on November 24 and 25, 1997. The prosecution elected to dismiss the criminal possession and menacing charges and proceed only on the burglary charge, a class B violent felony. The theory of the defense was that Ware

---

1. Citations to "T.__" refer to the trial transcript.

was too intoxicated to form the requisite criminal intent.

At trial, Ware called his girlfriend, Rose Marie Singletary ("Singletary"), as a witness. Consistent with the other witnesses' testimony, Singletary confirmed that Ware had consumed some portion of four to six forty-ounce bottles of malt liquor over an eight-hour period. However, she did not characterize Ware as drunk, and, in fact, did not provide any testimony that supported his defense of intoxication. When asked about Ware's level of inebriation, Singletary only stated that Ware and Slaughter did not stay for a long period of time at the apartment where everyone was drinking.

Ware testified in his own behalf that he shared about four forty-ounce bottles of malt liquor with several of his friends. He could not say how much alcohol he actually consumed, however. Ware did not claim that he was intoxicated and conceded that his consumption of alcohol that evening was not unusual.

The jury returned a verdict convicting Ware of the burglary charge. Defense counsel filed a motion to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30 alleging prosecutorial misconduct and violations of the prosecutor's disclosure duties pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In particular, Ware contended that the prosecution failed to disclose medical evidence that allegedly would have supported his defense of intoxication. The prosecution responded that, several months prior to trial, it made available to defense counsel the videotape of Ware at the police station being asked by emergency personnel if he needed medical treatment. Although defense counsel had access to this tape, he apparently did not review it. The judge denied the motion to vacate and sentenced Ware as a violent felony offender on December 10, 1997, to seven and one-half to fifteen years in prison.

Ware then collaterally attacked his conviction by means of a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10. Ware argued that (1) trial counsel was ineffective; (2) the grand jury was not properly instructed as to the law; (3) the defendant was denied the right to participate meaningfully in jury selection; (4) the court erred in reading back only a portion of the testimony requested by the jury; (5) the statements to police should have been suppressed; and (6) there was no probable cause to arrest. The trial judge denied the application in a written decision and order entered June 15, 1998. Ware filed an application captioned in the Appellate Division, Fourth Department, of New York State Supreme Court in which he asked for re-argument of the § 440.10 motion and for leave to appeal. As it was the trial judge who denied Ware's motion to reargue, it is unclear whether the application actually was filed with the Appellate Division. In the papers submitted by Ware and respondent there is no indication that the Appellate Division ever issued a decision with regard to Ware's request for leave to appeal. Indeed, respondent argues that Ware's claims are unexhausted for this reason.

Represented by new counsel, who was forced to seek an order directing the state to provide Ware with a copy of the trial transcript, Ware appealed his conviction to the Fourth Department. That court unanimously affirmed his conviction on May 10, 2000. *People v. Ware*, 272 A.D.2d 866, 708 N.Y.S.2d 658 (4th Dep't 2000). The New York Court of Appeals denied leave to appeal on June 23, 2000. *People v. Ware*, 95 N.Y.2d 839, 713 N.Y.S.2d 147, 735 N.E.2d 427 (2000).

Ware filed a habeas petition in Federal court raising one ground for habeas relief: he was unduly sentenced as a "Second (Predicate) Violent Felony Offender." Petition at 5 (Docket # 4).[2] Respondent answered the petition on January 2, 2001, asserting that the sentencing claim was unexhausted, and, in any event, factually baseless because Ware was sentenced as a violent felony offender, not a predicate violent felony offender. Respondent's Answer at 12 (Docket # 6).

Ware then submitted a document titled "Memorandum of Law, Plaintiff's Answer to Respondent's Brief" (Docket # 14) on February 12, 2001, in which he asserted that, in fact, he had exhausted his state court remedies. Ware also appeared to raise several additional grounds for habeas relief in his reply memorandum, namely, that trial counsel was ineffective and that several of the prosecutor's comments during summation were prejudicial.

Almost four years later, on January 24, 2005, respondent submitted a memorandum of law in which it argues that Ware's reply memorandum should be barred as a second or successive petition. In the alternative, respondent argues that if the memorandum is deemed an amended petition, the additional claims raised therein do not "relate back" to the sentencing claims in the original petition. *See* Respondent's Memorandum of Law (Docket # 16). The Court does not find respondent's arguments to be persuasive. *See Littlejohn v. Artuz,* 271 F.3d 360, 363 (2d Cir.2001) ("[I]t is clear that when amendment of a § 2254 petition is sought before the district court rules on the merits of the petition, the motion to amend is not a second or successive petition.") (citation omitted); *Rodney v. Miller,* No. CIV.A.CV–98–2384, 2003 WL 22282362, at *1 (E.D.N.Y. Sept. 18, 2003)

(declining to apply a stringent interpretation of the relation back doctrine; noting that the "applicability of the Federal Rules of Civil Procedure is discretionary in the habeas context") (citing Fed. R. Governing § 2254 Cases in the U.S. Dist. Cts. 11); *accord Subervi v. Stinson,* No. CIV.A.97–CV–1295, 2003 WL 22462489, at *4 (E.D.N.Y. Oct. 10, 2003); *cf. Felix v. Mayle,* 379 F.3d 612, 615 (9th Cir.2004) (finding that "[i]t unduly strains the usual meaning of 'conduct, transaction, or occurrence' to regard a criminal trial and conviction as a series of perhaps hundreds of individual occurrences[ ]"; holding that the proper "conduct, transaction, or occurrence" in the habeas context for purposes of Fed.R.Civ.P. 15(c) "is the trial and conviction under attack[ ]"), *cert. granted,* 543 U.S. 1042, 125 S.Ct. 824, 160 L.Ed.2d 610 (2005). Therefore, the Court will treat Ware's reply memorandum of law as an amended habeas petition and will consider all of the claims raised therein.

Finally, the Court finds that resolution of the exhaustion issues raised by Ware's habeas petition will be time-consuming, while Ware's habeas claims may be disposed of on the merits more readily. Therefore, in the interest of judicial economy, the Court will consider all of Ware's habeas claims on the merits. For the reasons set forth below, the petition is denied.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the

---

**2.** Ware originally filed his habeas petition in the Northern District of New York. It was transferred to the Western District of New York on November 16, 2000.

state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### Merits of the Petition

#### Claim 1. Prosecutorial misconduct

Ware contends that he was deprived of a fair trial due to certain comments made by the prosecutor during his summation regarding (1) Ware's failure to call witnesses to support his defense of intoxication, and (2) the implausibility, in the prosecutor's opinion, of that defense. On direct appeal, the Appellate Division stated,

> Although we reject the contention of defendant that he was deprived of a fair trial by prosecutorial misconduct on summation, we express our strong disapproval of the comment by the prosecutor that, if being drunk was a defense, he would have to lay off half his staff.

*People v. Ware*, 272 A.D.2d at 866, 708 N.Y.S.2d 658 (citations omitted). The court found that the other alleged instances of prosecutorial misconduct were not preserved for review and declined to review them in the interest of justice. *Id.* (citing N.Y.Crim. Proc. Law §§ 470.05(12), 470.15(6)(a)).[3]

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited. In order to overturn a con-

viction, the Court would have to find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); *accord Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998).

Thus, to be entitled to relief, Ware must show that he " 'suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' " *Tankleff*, 135 F.3d at 252 (quoting *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)). "Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.' " *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir.1998) (quoting *United States v. Forlorma*, 94 F.3d 91, 93 (2d Cir.1996) (quotations omitted)), *cert. denied*, 525 U.S. 1083 (1999). Reversal of a defendant's conviction is warranted only where " 'the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial.' " *Id.* (quoting *Forlorma*, 94 F.3d at 94) (quotations omitted). In determining whether a defendant has suffered actual

---

3. Respondent has not raised the affirmative defense of procedural default with respect to the prosecutorial misconduct claims and therefore has waived it. *See Larrea v. Bennett*, 2002 WL 1173564, at *12 n. 15 (S.D.N.Y. May 31, 2002) ("By requiring that the state initially plead the default, the Tenth Circuit recognized that 'state-court procedural default ... is an affirmative defense, and that the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter." ' ") (quoting *Hooks v. Ward*, 184 F.3d 1206, 1216 (10th Cir.1999)) (in turn quoting *Gray v. Netherland*, 518 U.S. 152, 165–66, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996)).

prejudice as a result of the prosecutorial misconduct, the reviewing court considers " 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.' " *Floyd*, 907 F.2d at 355 (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981) (*per curiam* )); *accord, e.g., Germosen*, 139 F.3d at 128; *United States v. Miller*, 116 F.3d 641, 683 (2d Cir.1997). Moreover, where the defendant did not object to the remarks at trial, reversal is warranted only where the remarks "were so substantially prejudicial as to constitute 'flagrant abuse.' " *United States v. Russo*, 302 F.3d 37, 47 (2d Cir.2002) (quoting *Germosen*, 139 F.3d at 128). The Court first will review all of the challenged remarks and then discuss whether their cumulative effect was sufficient to deny Ware his right to a fundamentally fair trial.

 After summarizing what he believed the evidence showed, the prosecutor, Ontario County District Attorney R. Michael Tantillo, Esq., commented to the jury,

... So, facing an array of evidence against him with no plausible way to deny the facts, the defendant retreats to the only thing that he can try to escape responsibility for his actions in this case and that is an attempt to cloak himself in the claim of intoxication, to say[,] "Hey, I was drunk. I am not responsible. It not my fault. I am not accountable. Let me go."

T.246. Counsel did not object to this comment, which Ware now complains improperly denigrated his proffered defense of intoxication. The Court does not find that this remark constituted misconduct. "A prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir.1995) (finding that the prosecutor characterization of the de-

fendant's case as a "fairy tale" was not improper) (quoting *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir.1992)) (internal quotation marks omitted); *Germosen*, 139 F.3d at 128 (government's comments, in particular, its suggestion that it was too busy "to spend [its] time prosecuting and framing innocent people," were arguably improper but did not constitute flagrant abuse).

 Later, the prosecutor stated,

[I]f intoxication was a defense, if all someone had to show when they committed a crime was they were drunk or under the influence of drugs at the time, I would probably have to lay off half my staff, a third of the staff—

T.248–49. Defense counsel objected, but the trial court overruled him. As the Appellate Division found, this comment was improper, far exceeding the bounds of appropriately zealous advocacy. This Court must express its strong disapproval of prosecutors who attempt to pass off such crude hyperbole as legal argument.

 The prosecutor later made the following comment which Ware also claims was improper:

... and I would like you also to consider the fact that if the defendant was truly so intoxicated that he didn't have any idea who he was, where he was, what he had done, there were an abundance of witnesses available that could have been called to support the story.

Now, I am not suggesting that the defendant has any obligation to call witnesses[,] but he did testify and he did produce one witness on his behalf. If he was truly completely zoned out, didn't know what he was doing, he had the opportunity to call people at Geneva General Hospital to back up that claim, to call the ambulance people that came right to the Geneva Police Station and spoke with the defendant at length, to

call any of the other numerous police officers that the defendant had contact with. But, none of them were called[,] and the answer is obvious why they weren't called, because they wouldn't support his claim now.

T.252–53. Defense counsel did not object to these remarks. Under Federal law, a prosecutor is ordinarily entitled to respond to the evidence, issues, and arguments put forth by the defense, *see, e.g., United States v. Marrale*, 695 F.2d 658, 667 (2d Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1434, 75 L.Ed.2d 793 (1983). Although this Court is of the opinion that the decision to do so is unwise, particularly in this case as discussed below, it is settled circuit law that the prosecutor may comment on a defendant's failure to call witnesses to contradict the factual character of the government's case as well as his failure to support his own factual theories with witnesses. *United States v. Bautista*, 23 F.3d 726, 733 (2d Cir.), *cert. denied*, 513 U.S. 862, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). However, the prosecutor may not go so far as to comment on the defendant's failure to testify, or suggest that the defendant has any burden of proof or an obligation to adduce any evidence at all. *Id.; see also United States v. Bubar*, 567 F.2d 192, 199 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977); *United States v. Parker*, 903 F.2d 91, 98 (2d Cir.) (prosecutor may not suggest that the defendant has any burden of proof or any obligation to adduce any evidence whatever), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. McDermott*, 918 F.2d 319, 328 (2d Cir.1990), *cert. denied*, 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991); *United States v. Gotchis*, 803 F.2d 74, 81 (2d Cir.1986). Thus, a constitutional violation does not occur unless the remark necessarily implicates the defendant's own failure to testify. *Bubar*, 567 F.2d at 199. Because Ware, in fact, did testify, the prosecutor's comment did not affect Ware's constitutional rights under the Fifth Amendment.

■ It is a closer question as to whether the prosecutor's comment impermissibly shifted the burden of proof to Ware. The Court again must rebuke the prosecutor for making this remark. On the one hand, the prosecutor covered his bases in alluding to the constitutional principle that a defendant has no obligation to prove his innocence. On the other hand, in his very next statement the prosecutor strongly implied that Ware in fact did have a duty to "back up [his] claim" of intoxication by calling witnesses. In this way, the prosecutor risked shifting the burden of proof to Ware. The Court believes that better judicial practice dictates the issuance of a curative instruction by the trial judge at the moment these kinds of marginal comments are made, even if given *sua sponte* in the absence of a timely objection. Nevertheless, the Court finds that whatever ambiguity may have been caused by the remark with respect to the burden of proof was clarified by the trial judge's instruction that the People bore the burden of proof as to every element of the crime charged and that the burden never shifted to the defendant. *See Bautista*, 23 F.3d at 733 (citing *McDermott*, 918 F.2d at 327) (in turn citing *United States v. Hasting*, 461 U.S. 499, 507–12, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)).

■ Finally, and most disturbing, in closing the prosecutor described Ware as a "grown man and an adult who knows better, should know better, who has been through the system many, many times before, knows how it operates." T.255. The prosecutor recounted Ware's actions on the night of the incident and suggested to the jury that if it believed that Ware could have done all of those things "without knowing where he was, knowing what he

was doing or intending to commit those actions, then it would be [the jury's] obligation to tell him what he did was okay and let him go." T.255. Trial counsel did not object to this comment. On appeal, appellate counsel argued that such a comment was inflammatory because it suggested to the jury that an acquittal is equivalent to condoning the character of a defendant.

■ Unfortunately, the prosecutor failed to resist the temptation to appeal to the sympathies or the prejudices of the jury in order to secure a guilty verdict. The prosecutor's reference to Ware's having been through the system "many, many times" is a not-so-subtle reference to Ware's criminal record and could be interpreted as suggesting that he should be convicted on the basis of prior bad acts. As the prosecutor should know, proof of a defendant's prior crimes or bad acts is not admissible in New York for the purpose of establishing the defendant's propensity or predisposition to commit the crime charged in the indictment. *E.g., People v. Rojas*, 97 N.Y.2d 32, 36, 735 N.Y.S.2d 470, 760 N.E.2d 1265 (2001) ("[A] criminal case should be tried on the facts and not on the basis of a defendant's propensity to commit the crime charged.") (citing *People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901)); *accord, People v. Mateo*, 2 N.Y.3d 383, 438, 779 N.Y.S.2d 399, 811 N.E.2d 1053 (2004). Furthermore, the Federal courts have steadfastly adhered to this evidentiary rule as can be seen by its codification in Federal Rule of Evidence 404(b) which proscribes the use of evidence of "other crimes, wrongs, or acts" committed by the defendant "to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b); *accord, e.g., United States v. Downing*, 297 F.3d 52, 58 (2d Cir.2002).

After reviewing the transcript in its entirety, the Court agrees with Ware that the prosecutor's remarks clearly were extremely improper and ill-advised. The issue, however, is whether the statements effectively denied Ware his fundamental right to a fair trial. Reviewing the challenged remarks under the three-part test set forth in *Modica*, 663 F.2d 1173, *supra*, the Court finds that the misconduct was severe: Ware's trial unfortunately reveals a pattern of misconduct by the prosecutor.[4] Regrettably and inexplicably, the trial judge did not take the opportunity to employ any curative measures and instead implicitly condoned the prosecutor's impropriety by overruling defense counsel's objection to the remark about the defense of intoxication and by failing to issue *sua sponte* curative instructions regarding the offensive comments to which counsel did not object.

■ However, upon a review of the entire trial transcript, the Court is convinced of the certainty of Ware's conviction, even absent the improper prosecutorial remarks and the errors of the trial

---

4. In particular, the Court is extremely troubled by the prosecutor's reference to Ware's lengthy criminal record. However, as discussed below, because the Court cannot find that Ware's due process rights were substantially prejudiced by this comment (to which no objection was registered), the Court cannot deem this remark to be an instance of "flagrant abuse." *See, e.g., Russo*, 302 F.3d at 47 (in trial on charges of witness tampering and obstruction of justice, prosecutor's reference to defendants as "powerful gangsters," "mafi- oso," and "mob boss" in opening and closing statements did not amount to flagrant abuse where counsel failed to timely object) (citing *United States v. Zackson*, 12 F.3d 1178, 1183 (2d Cir.1993) (finding no error where the prosecutor repeatedly called defendant a "drug dealer" and an "experienced drug dealer"; taken in context, statements were part of argument that witness's innocent explanation for his association with defendant "was implausible given their prior illicit relationship")).

judge. Before reviewing the relevant testimony, the Court notes that intoxication is not actually a complete affirmative defense to a criminal charge. Rather, it merely reduces the gravity of the offense by negating an element of the crime charged. *People v. Harris*, 98 N.Y.2d 452, 474 n. 4, 475, 749 N.Y.S.2d 766, 779 N.E.2d 705 (N.Y.2002) (citing N.Y. Penal Law § 15.25). The level of intoxication that a defendant must demonstrate is quite high. *See, e.g., People v. Monroe*, 277 A.D.2d 598, 716 N.Y.S.2d 114 (3d Dep't 2000) (rejecting contention that counsel should have argued intoxication defense; defendant's conduct in driving his vehicle away from the scene, his actions upon apprehension and his ability to repeatedly recount his detailed version of the events "simply d[id] not evince incapacitating intoxication")[5].

At trial, Slaughter, the victim, testified without significant impeachment concerning the attack. Slaughter could not say how much Ware had to drink; he merely testified that Ware, Wilson and McKoy shared six forty-ounce bottles of malt liquor. Slaughter did not characterize Ware as being drunk at the time of the incident.

McKoy, Slaughter's girlfriend, testified that she, Wilson, and Ware shared eight forty-ounce bottles of beer over the course of the afternoon and evening. When asked if Ware was drunk that night, McKoy stated, "[N]ot really, but he was pretty high." Wilson testified similarly to McKoy and, when asked if Ware was drunk, only stated, "Yeah, he was feeling pretty good." She could not state how much alcohol Ware had to drink that day.

Singletary, Ware's girlfriend, testified for the defense that Ware shared five to six forty-ounce bottles of beer with Slaughter, Wilson and McKoy. When asked whether Ware was intoxicated, she merely responded, "Well, [he] didn't stay that long [at the apartment]." That was the extent of her testimony regarding Ware's level of inebriation. It is telling that Ware's own witness did not provide testimony to support his claim of intoxication.

Ware testified that he "couldn't really say" how much he had to drink that day. He stated that he "was just out of it" and passed out right before Slaughter was stabbed. Ware testified that he drank every day, however. Significantly, Ware conceded that the amount of alcohol he consumed on the day of the incident was not unusual.

The arresting officer, Sergeant D'Amico, testified that although Ware smelled of alcohol, he was able to conduct himself and respond in a coherent manner to police questioning. Ware's claim that he was so inebriated that he recalled nothing about the incident is further belied by the fact that he had the presence of mind to change his clothes and shoes after the incident.

In light of the testimony offered at Ware's trial, the Court cannot find that the prosecutor's misconduct substantially prejudiced Ware's right to a fair trial: the evidence of Ware's guilt was compelling,

---

5. *Cf. People v. Gaines*, 83 N.Y.2d 925, 927, 615 N.Y.S.2d 309, 638 N.E.2d 954 (1994) (defendant not entitled to jury charge on defense of intoxication where defendant's evidence lacked requisite details tending to corroborate his claim of intoxication, such as the number of drinks, the period of time during which they were consumed, the lapse of time between consumption and the event at issue, whether he consumed alcohol on an empty stomach, whether his drinks were high in alcoholic content, and the specific impact of the alcohol upon his behavior or mental state; neither witness's statement that defendant was "high" nor the police officer's comments that defendant had glassy eyes and alcohol on his breath "added sufficiently to defendant's statements to warrant the intoxication instruction").

while the proof of his mitigating defense of intoxication was extremely thin. Under such circumstances, there was no need for the prosecutor to resort to misconduct; had the prosecutor played fairly and by the rules, he still most certainly would have secured a conviction given the overwhelming evidence of guilt.

As the Second Circuit noted in *Modica*, " 'The appellate tribunals have found to their dismay that they cannot uphold a conviction and yet successfully condemn the method by which it was secured. Carefully written opinions condemning the indiscretion and misconduct have not been successful to curb improprieties. The very act of upholding the conviction has given prosecutors approval, and the "judicial slap on the wrist" has not deterred the prosecutor from his unethical and improper tactics.' " *Modica*, 663 F.2d at 1183 (quoting Note, Prosecutor Indiscretion: A Result of Political Influence, 34 IND.L.J. 477, 487 (1959)). Invoking the remedy of a new trial is not appropriate where, as here, "the misconduct has not substantially prejudiced [the] defendant's trial." *Id.* The Second Circuit has observed that "[r]eversal is an ill-suited remedy for prosecutorial misconduct; it does not affect the prosecutor directly, but rather imposes upon society the cost of retrying an individual who was fairly convicted." *Modica*, 663 F.2d at 1184.

Furthermore, because the Court is only sitting in collateral review of this matter, it does not have the jurisdiction to judicially sanction a prosecutor or issue contempt penalties against him. So strong is this Court's disapproval of the prosecutor's misconduct that were this Court possessed of the requisite jurisdiction, it would issue sanctions. Lacking such jurisdiction, the Court can only employ the power of words. In that spirit, in addition to comments already made, the court offers the following: State and Federal trial courts are courts of law, with rules of evidence and conduct based on strong public policy considerations, carefully constructed and nurtured over the centuries by our forefathers and set forth in well-established time-tested rules and precedent; they are not television crime shows where theatrics and popular and entertaining misconduct are routinely scripted—where, in convicting the "bad guys," the ends justify the means. The Court admonishes the prosecutor to carefully review New York state's evidentiary law, the Federal Rules of Evidence, the ABA Model Code of Professional Responsibility, the ABA Model Rules of Professional Conduct, and the ABA Standards for Criminal Justice so that he may familiarize himself with the proper manner in which to conduct himself when prosecuting a case on behalf of the People of the State of New York.

## Claim 2. Ineffective assistance of trial counsel

 Ware complains that his trial counsel failed to fully investigate the issues surrounding the instant case; failed to meet with Ware until two days before trial; failed to interview any witnesses whose names and addresses had been provided by the defendant; and failed to secure any records from the hospital on the night in question which would have substantiated that defendant was, in fact, intoxicated. Petitioner's Memorandum at Point I (Docket # 14).

These claims are without merit. First of all, Ware has never identified the names of the witnesses whom he believes should have been interviewed. Nor has Ware ever indicated what facts were missed by his defense counsel due to counsel's alleged failure to investigate and interview witnesses. As to the failure to obtain medical records, it is undisputed that Ware refused treatment when he was brought to the emergency room. Finally, as to de-

fense counsel's failure to meet frequently enough with Ware, the Court notes that Ware never voiced an objection to counsel's representation of him during any of the pre-trial hearings or the trial itself. In sum, Ware's unsubstantiated assertions of attorney error do not provide a basis for Federal habeas relief.

### Claim 3. Illegality of sentence

Ware contends that he was improperly sentenced as a second violent felony offender. A review of the sentencing transcript, however, indicates that the judge "sentenced [Ware] as a violent felony offender to a maximum of fifteen years and a minimum of seven and a half years in the New York State Department of Corrections." Sentencing Transcript at 13, attached as Exhibit D to Respondent's Answer (Docket # 6). In addition, Ware's certificate of conviction states that he was sentenced as a violent felony offender. Had Ware been adjudicated as a predicate or second violent felony offender, the judge would have had to impose a determinate sentence (in whole or half years) of ten to twenty-five years. *See* N.Y. Penal Law § 70.04(3). Ware, however, was sentenced to an indeterminate sentence of seven and one-half to fifteen years. Thus, Ware's sentence is inconsistent with the second or predicate violent felony offender sentencing structure. Consequently, there is no merit to Ware's claim that he was sentenced as a predicate or second violent felony offender.

### CONCLUSION

For the reasons stated above, Julius Ware's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Ware has failed to make a substantial showing of a denial of a constitutional

right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

### IT IS SO ORDERED